## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOUSING EQUALITY CENTER OF PENNSYLVANIA<br>P.O. Box 558<br>Fort Washington, PA 19034 | **Civil Action No. 2:22-cv-4894** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| PROMANAGED INC.<br>717 Fellowship Rd<br>Mt Laurel Township, NJ 08054 | |
| PRO-MANAGED LLC<br>1248 William Penn Drive<br>Bensalem, PA 19020 | |
| REVO CAPITAL PARTNERS LLC<br>1248 William Penn Drive<br>Bensalem, PA 19020 | |
| REVO CAPITAL PARTNERS II LLC<br>1248 William Penn Drive<br>Bensalem, PA 19020 | |
| REVO CAPITAL PARTNERS III LLC<br>1248 William Penn Drive<br>Bensalem, PA 19020 | |
| REVO CAPITAL PARTNERS IV LLC<br>1248 William Penn Drive<br>Bensalem, PA 19020 | |
| REVO CAPITAL PARTNERS V LLC<br>1248 William Penn Drive<br>Bensalem, PA 19020 | |
| GARY RILLING<br>1248 William Penn Drive<br>Bensalem, PA 19020 | |
| WILLIAM SMITH<br>1248 William Penn Drive<br>Bensalem, PA 19020 | |
| Defendants. | |

**NATURE OF THE ACTION**

1.      Plaintiff Housing Equality Center of Pennsylvania ("HEC") brings this action against ProManaged Inc., Pro-Managed LLC; Revo Capital Partners LLC; Revo Capital Partners II LLC; Revo Capital Partners III LLC; Revo Capital Partners IV LLC; Revo Capital Partners V LLC; William Smith; and Gary Rilling (collectively, "Defendants") to challenge Defendants' policy and practice of refusing to accept Housing Choice Vouchers in predominantly white neighborhoods while often agreeing to accept them in majority Black neighborhoods. Defendants' policy and practice constitute unlawful housing discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*[1]

2.      The City of Philadelphia ("Philadelphia") has an affordable housing crisis. 54% of Philadelphia's renters are cost-burdened meaning they pay at least 30% of their income on housing costs.[2]  The problem is most acute for renters making below $30,000 per year. 88% of them are cost-burdened, with 68% severely cost-burdened, meaning they spend at least 50% of their income on housing.[3]

3.      The Housing Choice Voucher Program ("Housing Choice Voucher" or the "Voucher Program"), often referred to as "Section 8," is the federal government's major program for providing financial assistance to low-income families to enable them to afford decent, safe and sanitary housing in the private rental market. In Philadelphia, the program serves

---

[1] Defendants' conduct also constitutes source of income discrimination in violation of the Philadelphia Fair Practice Ordinance. Phila. Code § 9-1100 *et seq*. That Ordinance explicitly prohibits discrimination on the basis of "any lawful source of income, including but not limited to… housing assistance programs." Phila. Code § 9-1102(cc).  On September 27, 2022 HEC filed a complaint for source of income discrimination against Defendants with the Philadelphia Commission on Human Relations, the entity charged with enforcing the local Ordinance.

[2] Larry Eichel & Octavia Howell, How Philadelphia Can Address Its Affordable Housing Shortage, Pew (2020), *available at* https://www.pewtrusts.org/en/research-and-analysis/articles/2020/10/26/how-philadelphia-can-address-its-affordable-housing-shortage.

[3] The State of Housing Affordability in Philadelphia, Pew (2020), *available at* https://www.pewtrusts.org/en/research-and-analysis/reports/2020/09/the-state-of-housing-affordability-in-philadelphia.

approximately 19,350 families. 83.5% of those families are Black. Thousands more sit on a waitlist for years, hoping to receive a Housing Choice Voucher.

4.      But Philadelphians with a Housing Choice Voucher face a steep challenge to find landlords who will accept their subsidy. A recent study from the Urban Institute, which conducted hundreds of test applications throughout Philadelphia, found that 67% of landlords in the city refuse to rent to voucher holders.[4] And the voucher denial rate in low-poverty census tracts in Philadelphia is even higher at 83%.[5]

5.      Refusing to accept vouchers limits the ability of low-income renters to access safe and affordable housing in diverse neighborhoods with low crime and local amenities like better-performing public schools.[6]

6.      ProManaged Inc. and a related entity Pro-Managed LLC (together "Pro-Managed"), is a large full-service property management company that owns and/or manages at least 77 rental properties throughout Philadelphia, some of which contain multiple rental units.[7] Through Pro-Managed, Defendants advertise "no Section 8" and exclude voucher holders in predominantly white neighborhoods, telling prospective tenants who call or text about advertised rentals that vouchers are not accepted.

7.      Defendants' policy and practice disproportionally and adversely affect Black renters. In Philadelphia, 83.5% of Housing Choice Voucher households are Black, compared with only 9% that are white. The racial makeup of renters in Philadelphia is not nearly as

---

[4] MARY CUNNINGHAM, ET AL., A PILOT STUDY OF LANDLORD ACCEPTANCE OF HOUSING CHOICE VOUCHERS, URBAN INSTITUTE (2018), https://www.huduser.gov/portal/pilot-study-landlord-acceptance-Housing Choice Voucher.html; *see also* Julia Teruso, "In Philly, two-thirds of landlords won't take affordable housing vouchers – even when the renter can afford the place," PHILA. INQ., (Aug. 27, 2018), https://www.inquirer.com/philly/news/housing-vouchers-section-8-affordable-urban-institute-study-20180827.html.
[5] *See id.*
[6] Cunningham et al., *supra* note 4.
[7] Defendants Revo Capital Partners; Revo Capital Partners II; Revo Capital Partners III; Revo Capital Partners IV; Revo Capital V; Gary Rilling and William Smith are all listed as deed holders for Pro-Managed's various properties.

skewed—44% of renters are Black and 39% are white.  Because Black renters are nine-times more likely than non-Black individuals to hold Housing Choice Vouchers, Black renters are significantly more likely to be disproportionately adversely impacted by Defendants' policy and practice of refusing to rent to Section 8 tenants in most of their properties.

8.      Meanwhile, Defendants advertise "Section 8 accepted" only in units that are in vast-majority Black neighborhoods. Defendants' policy and practice of explicitly accepting Section 8 vouchers *only* in predominantly Black neighborhoods indicate that race is an unlawful motivating factor for their practice.

9.      Defendants' policy and practice perpetuate segregation in a manner contrary to the public policy goals of the FHA and U.S. Department of Housing and Urban Development ("HUD") regulations that were enacted to break down segregative housing patterns caused by racial and economic discriminatory behavior such as redlining.

10.     Defendants' policy and practice have the effect of placing an "artificial, arbitrary, and unnecessary" barrier that prevents low-income Black renters with Housing Choice Vouchers from living in higher opportunity areas, the kind of unlawful behavior contemplated by the Supreme Court in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 540 (2015) (recognizing disparate impact as a legal theory under the FHA).

11.     Defendants' policy and practice have no legitimate, non-discriminatory purpose.

12.     As a direct result of Defendants' racially discriminatory policy and practice, Plaintiff now brings suit under the Fair Housing Act seeking actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter in this action pursuant to 42

U.S.C. § 3613(a), 28 U.S.C. § 1343, and 28 U.S.C. § 1331.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial

part of the events, acts, or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

15.     Plaintiff HEC is the nation's oldest fair housing council. HEC is a nonprofit

organization incorporated in Pennsylvania, with its principal place of business located at P.O.

Box 558, Fort Washington, Pennsylvania 19034. HEC serves Philadelphia and the surrounding

counties of Bucks, Chester, Delaware, Lehigh, Montgomery and Northampton. Its mission is to

ensure individuals' equal access to housing and to provide programs in furtherance of this cause,

including but not limited through training and testing investigations, education, consulting and

counseling.

16.     Defendant ProManaged Inc. is a corporation with corporate headquarters at 717

Fellowship Rd, Mt Laurel Township, NJ 08054. Its website is https://www.promanaged.us/.

17.     Defendant Pro-Managed LLC is a Pennsylvania limited liability company with a

registered address at 1248 William Penn Drive, Bensalem, PA 19020.

18.     Upon information and belief, Pro-Managed owns and and/or manages over 77

rental properties in Philadelphia, with multiple rental units in some of these properties

(hereinafter "Pro-Managed's portfolio").

19.     Defendant Revo Capital Partners LLC is a Pennsylvania limited liability company

with a registered address at 1248 William Penn Drive, Bensalem, PA 19020. Defendant Revo

Capital Partners LLC is the deed-holder of some of the properties within Pro-Managed's portfolio.

20.     Defendant Revo Capital Partners II LLC is a Pennsylvania limited liability company with a registered address at 1248 William Penn Drive, Bensalem, PA 19020. Defendant Revo Capital Partners II LLC is the deed-holder of some of the properties within Pro-Managed's portfolio.

21.     Defendant Revo Capital Partners III LLC is a Pennsylvania limited liability company with a registered address at 1248 William Penn Drive, Bensalem, PA 19020. Defendant Revo Capital Partners III LLC is the deed-holder of some of the properties within Pro-Managed's portfolio.

22.     Defendant Revo Capital Partners IV LLC is a Pennsylvania limited liability company with a registered address at 1248 William Penn Drive, Bensalem, PA 19020. Defendant Revo Capital Partners IV LLC is the deed-holder of some of the properties within Pro-Managed's portfolio.

23.     Defendant Revo Capital Partners V LLC is a Pennsylvania limited liability company with a registered address at 1248 William Penn Drive, Bensalem, PA 19020. Defendant Revo Capital Partners V LLC is the deed-holder of some of the properties within Pro-Managed's portfolio.

24.     Defendants Revo Capital Partners I LLC, Revo Capital Partners II LLC, Revo Capital Partners III LLC, Revo Capital Partners IV LLC, and Revo Capital Partners V LLC each advertise through Pro-Managed that they accept Section 8 vouchers in some of their properties in vast-majority Black neighborhoods while advertising that they do not accept Section 8 vouchers in some of their properties in neighborhoods with majority white populations.

25.     Defendant William "Bill" Smith is the Founder and Chief Operating Officer of Pro-Managed who conducts business in Philadelphia. William Smith also is the individual deed-holder on some of the properties within Pro-Managed's portfolio, including those in neighborhoods with majority white populations that advertise "no Section 8."

26.     Defendant Gary Rilling, together with Defendant William Smith or on his own, conducts business in Philadelphia and is the individual deed-holder on some of the properties within Pro-Managed's portfolio, including those in neighborhoods with majority white populations that advertise "no Section 8."

27.     Upon information and belief, Defendants Revo Capital Partners LLC, Revo Capital Partners II LLC, Revo Capital Partners III LLC, Revo Capital Partners IV LLC, and Revo Capital Partners V LLC are related entities and together with William Smith and Gary Rilling all conduct business as part of a common enterprise in the ownership and management of Pro-Managed and its property portfolio. Notably, Defendants Pro-Managed LLC, Revo Capital Partners LLC, Revo Capital Partners II LLC, Revo Capital Partners III LLC, Revo Capital Partners IV LLC, Revo Capital Partners V LLC, William Smith and at times Gary Rilling all share the business address 1248 William Penn Drive, Bensalem, Pennsylvania 19020.

28.     All Defendants are jointly and severally liable for the unlawful acts alleged herein.

## FACTS

**Overview of the Housing Choice Voucher Program in Philadelphia**

29.     Congress established the Housing Choice Voucher Program (formerly the Section 8 Existing Housing Program) as part of the Housing and Community Development Act of 1974, now codified at 42 U.S.C. § 1437f(o). *See also* 24 C.F.R. § 982.1 *et seq*.

30.     Through the Voucher Program, HUD provides federal subsidies to local Public Housing Agencies ("PHA") to administer vouchers to low-income renters in their communities. The Philadelphia Housing Authority is the local administrator of the Voucher Program in Philadelphia.

31.     In Philadelphia, about 70% of Housing Choice Voucher holders earn under $20,000 per year.[8]

32.     The Voucher Program works by subsidizing a portion of these households' rent so that they can afford safe, decent housing in a neighborhood of their choice. The typical Philadelphia Housing Choice Voucher holder pays about 30% of their monthly income towards rent. The Philadelphia Housing Authority pays the remainder directly to the landlord. As long as the housing meets the program requirements, participants are free to choose any available rental unit on the market. Because of the price of housing in Philadelphia, in practical terms, the typical Philadelphia Housing Choice Voucher holder who earns under $20,000 per year is foreclosed from renting in almost all neighborhoods and faces a substantial risk of homelessness without the assistance of the Voucher Program or another housing subsidy.

---

[8] *See* HUD OFFICE OF POLICY DEVELOPMENT AND RESEARCH DATABASE, DATASET: PICTURE OF SUBSIDIZED HOUSING, https://www.huduser.gov/portal/datasets/assthsg.html (last accessed Aug. 23, 2022).

33.     Defendants and other Philadelphia landlords and their agents who refuse to rent to Housing Choice Voucher holders exacerbate the affordable housing shortage by reducing available housing otherwise eligible under the Voucher Program.

34.     Defendants and other Philadelphia landlords and their agents who refuse to rent to Housing Choice Voucher holders also undercut one of the goals of the Voucher Program to help households move to "opportunity-rich neighborhoods," which studies show result in long-term improvements in educational and economic outcomes.[9]

35.     Despite the stated goals of the Voucher Program, Housing Choice Voucher holders in Philadelphia are largely located in low-income, racially concentrated neighborhoods. 43% of Housing Choice Voucher households live in neighborhoods that are over 80% Black whereas only 1% of Housing Choice Voucher households live in neighborhoods that are over 80% white.[10]

**Housing Choice Voucher Recipients in Philadelphia are Disproportionately Black**

36.     The total current estimated number of renter-occupied housing units in Philadelphia is 289,341. Approximately 44% of these renter households are Black and 39% are white.

37.     In Philadelphia, Black households make up a disproportionate share of the Voucher Program as compared to their proportion of the city as a whole. Of the 19,350 Housing Choice Voucher households in Philadelphia, approximately 83.5% are Black, compared with about 44% in the City's renter household population as a whole.  Meanwhile, only 9% of

---

[9] DANIEL TELES & YIPENG SU, URBAN INSTITUTE, SOURCE OF INCOME PROTECTIONS AND ACCESS TO LOW-POVERTY NEIGHBORHOODS (2022), *available at* https://www.urban.org/sites/default/files/2022-10/Source%20of%20Income%20Protections%20and%20Access%20to%20Low-Poverty%20Neighborhoods.pdf.
[10] CITY OF PHILADELPHIA & PHILADELPHIA HOUSING AUTHORITY, *Draft Assessment of Fair Housing* (2022), pg. 9, 32 *available at* https://www.phila.gov/media/20220527124813/Philadelphia-Assessment-of-Fair-Housing-Draft-5-27-22.pdf.

Voucher Program households are white, compared with 39% of the City's renter household population as a whole.

38.     Described another way, 83.5% of Philadelphia renters with Housing Choice Vouchers are Black and only 9% are white; while 41% of Philadelphia renters without Housing Choice Vouchers are Black, and 36% are white.

39.     Furthermore, about 13% of the Black Philadelphia renter population maintains Housing Choice Vouchers (roughly 1 in 8 Black renters), as compared to 1.7% of the white Philadelphia renter population (roughly 1 in 59 white renters). This means that a Black household in Philadelphia is almost nine-times more likely than a white household to be renters who are disproportionately and adversely impacted by a landlord's refusal to rent to a Voucher Program recipient.

**Defendants' Policy and Practice of Refusing to Rent to Housing Choice Voucher Program Participants Except in Majority-Black Neighborhoods**

40.     Upon information and belief, based upon advertisements for available and "coming soon" properties listed on Pro-Managed's website, as well as publicly available data on City websites, Defendants own and operate at least 77 properties throughout Philadelphia.[11]

41.     Defendants' properties are largely located in white communities in Northeast Philadelphia. At least 45 of Defendants' properties—over half—are located in census tracts that are at least 70% white (the "Northeast Properties").

42.     Defendants also have a smaller portfolio of properties that they own and operate in the residential neighborhood of Southwest Philadelphia (the "Southwest Properties"): six properties in census tract 62, a neighborhood that is about 85% Black and 8% white; four

---

[11] Upon information and belief, Defendants also own and operate rental properties in the counties surrounding Philadelphia.

properties in census tract 67, a neighborhood that is about 83% Black and 3% white; and one property in census tract 61, a neighborhood that is about 85% Black and 9% white.

43.      The Pro-Managed website contains a page of available properties where prospective tenants can search for active and "coming soon" listings.[12] Each listing contains information such as the exact address of the unit, the monthly rental price, a brief description of the layout of the property and amenities, and contact information for how to schedule a tour of the property and amenities. Since at least July 2020 Defendants have advertised that they do not accept vouchers for properties in predominately white neighborhoods while accepting vouchers for their properties in predominantly Black neighborhoods.

44.      For some properties, including the "Northeast Properties," the listings also unequivocally and unlawfully advertise "no Section 8."

45.      HEC testing confirmed Defendants' refusal to accept Housing Choice Vouchers in its Northeast Properties. In 2021, HEC commenced an investigation to see whether Defendants refused to rent to Housing Choice Voucher holders as advertised and whether this discrimination was only because of the prospective tenant's Section 8 status.

46.      Between May 2021 and December 2021, HEC conducted tests of Pro-Managed listings in Philadelphia that stated "no Section 8" in their advertisements. Testers inquired about the availability of housing and whether Housing Choice Vouchers would be accepted. HEC coordinated the tests and provided a common set of instructions to the testers.

47.      HEC employed and trained each of the experienced testers involved in this investigation. In each test, the tester posed as a prospective renter of an available unit advertised on Pro-Managed's website. HEC provided testers with a profile that included their employment,

---

[12] PROMANAGED.US, *Available Properties*, http://tour.promanaged.us/schedule/ (last visited Dec. 2, 2022).

income and whether they planned to use a Housing Choice Voucher as a source of rental

payment. The testing revealed a discriminatory pattern and practice by Defendants of not

accepting Housing Choice Vouchers; in each case where the renter planned to use a Housing

Choice Voucher, they were told that the landlord would not accept the voucher. Also in each

such case, the tester could afford to pay the advertised rent.

48.     From May to June of 2021 two testers contacted Pro-Managed seeking

information about a Northeast rental opportunity located at 7218 Marsden Street, Philadelphia,

PA 19135. The first tester, who did not maintain a Housing Choice Voucher, left a voicemail

seeking information about the unit and received no response. This tester then exchanged a

number of text messages with Pro-Managed and received information about the apartment and

how to apply. The second tester, who maintained a Housing Choice Voucher, left a voicemail

seeking information about the property and received a text message back that the property was

available. The tester responded on May 27, 2021, "Ok thank you. [*sic*] I receive rental assistance

through a section 8 voucher monthly. [*sic*] Do you accept that?"  Pro-Managed or their

authorized agent responded on the same day, "Hey. Unfortunately we do not accept section 8 for

this property. I do wish you the best of lick [*sic*] with your search."  The second tester responded

right away, "Thank you. Are there any other properties available that would accept a section 8

Housing Choice Voucher?" to which Pro-Managed replied, "At this time, we do not have any

properties that do accept section 8 unfortunately."

49.     In August 2021 two testers contacted Pro-Managed seeking information in a test

of a Northeast rental opportunity located at 7019 Charles Street, Unit 2, Philadelphia, PA 19135.

The first tester, who maintained a Housing Choice Voucher, had a telephone conversation with

"Bill" from Pro-Managed. After receiving monthly income requirement information from Bill,

the tester revealed that he had a Housing Choice Voucher and asked whether Pro-Managed would accept this form of income. Bill responded that this property does not accept Section 8 at this time and the call ended. The second tester, who also maintained a Housing Choice Voucher, left four voicemails for Pro-Managed over the course of seven days, none of which were returned with a call or text message. The last two calls included that the tester maintained a Housing Choice Voucher.

50.     In December 2021 two testers contacted Pro-Managed seeking information about a Northeast rental opportunity located at 4801-5 Longshore Avenue, Unit C, Philadelphia, PA 19135.  The first tester, who maintained a Housing Choice Voucher, called Pro-Managed on December 3, 2021, and spoke with "Bill."  After receiving information about the unit and how to apply, the tester asked whether Pro-Managed accepts Section 8.  Bill responded no, and that the only property that accepts Section 8 is in Ridley Park, Pennsylvania.  The second tester, who also maintained a Housing Choice Voucher, called Pro-Managed two times and left voicemail messages stating that the tester wanted to speak with an agent about the apartment. Pro-Managed did not call the tester back.

51.     Upon information and belief, after HEC concluded its testing investigation, Pro-Managed listed "Section 8 accepted" in some of its properties, but *only* the Southwest Properties in overwhelmingly Black census tracts.

52.     The image below is a map of Philadelphia's Black population by census tract. The outlined census tracts are those in which Pro-Managed advertises properties. The red diamonds represent properties in which Pro-Managed advertises that it accepts Housing Choice Vouchers.



**HEC Experienced Particularized Harm Because Plaintiff Diverted Resources and Defendants Frustrated Its Mission to Combat Housing Discrimination**

53.     Defendants' discriminatory and unlawful policy and practice have frustrated and continue to frustrate HEC's mission to advance fair and equal access to housing opportunities for all Pennsylvanians. In connection with its mission, HEC conducts education and provides consulting services so that both consumers and housing providers understand their rights and obligations under local, state and federal fair housing laws. HEC also has grants from HUD to conduct fair housing education, outreach and testing.

14

54.     Defendants' policy and practice of not accepting Housing Choice Vouchers in integrated, whiter neighborhoods while explicitly accepting them in Black neighborhoods raise issues central to HEC's goals of furthering fair housing, promoting racially integrated communities and ensuring compliance with the Fair Housing Act as well as local laws like Philadelphia's source of income protection. Phila. Code § 9-1100 *et seq*.

55.     Prior to filing this complaint, for over the last year, HEC has diverted resources to this investigation and counteracting Defendants' refusal to accept Housing Choice Vouchers in some of its properties because Defendants' unlawful actions amount to source of income discrimination, treat individuals differently, and have a disparate impact on individuals on the basis of an FHA-protected class. HEC's mission is frustrated by Defendants' policy and practice as alleged herein because they violate federal and Philadelphia fair housing laws and because landlords who refuse to accept housing subsidies reduce opportunities for safe and affordable housing for low-income individuals and deny them access to fair and equal housing. Defendants' general refusal to rent to Voucher Program participants in integrated communities has the same effect as refusing to rent to Black renters, and Defendants' acceptance of the Voucher Program only in low-income Black neighborhoods is akin to reverse redlining—both of which are the antithesis of HEC's first and central goal to combat racial discrimination in housing.

56.     HEC has devoted and continues to devote staffing, time and other resources to specifically investigate Defendants' discriminatory conduct. Investing these scarce resources into uncovering Defendants' discriminatory conduct has diverted funds, as well as staffing time and attention, away from HEC's other work to address racial discrimination in housing.

57.     In direct response to Defendants' discriminatory conduct, prior to filing this action HEC engaged in community education to teach about the issues revealed in the course of HEC's testing investigation, including but not limited to:

a.  HEC offers publications for consumers and landlords to raise awareness about their rights and obligations under the law. In October 2021, HEC incorporated content about source of income discrimination and that the refusal to accept certain kinds of income could violate the rights of protected classes under the Fair Housing Act in its landlord compliance manual. This content was also made available in October 2022 on HEC's landlord compliance website.

b.  In addition to housing discrimination information in the compliance manual, starting in May 2022 HEC invested money in Facebook advertisements to engage in a public education campaign about Housing Choice Voucher discrimination. The advertisement ran for two weeks during which time approximately 2,300 unique viewers engaged with the anti-discrimination content.

c.  To prepare for the possibility that the Facebook advertisement would prompt new consumer complaints about the kinds of discriminatory behavior revealed by the testing investigation, HEC invested resources to prepare staff to handle these kinds of calls and other communications.

d.  In August 2022, HEC continued its efforts aimed at community education by drafting a new educational fact sheet about source of income discrimination in housing and that the failure to accept Housing Choice Vouchers may be the basis of a Fair Housing Act violation as well as under local law. This fact sheet has been posted on HEC's website and disseminated electronically via email, social

media, and newsletters, and print copies have been distributed to approximately

thirty social service agencies serving low and moderate income clients in

Philadelphia. HEC has also offered this fact sheet to the Philadelphia Office of

Community Empowerment & Opportunity.

e. In September 2022, HEC's Outreach Coordinator attended a meeting with the

West Philadelphia Promise Zone Housing Committee and discussed source of

income discrimination and Fair Housing Act disparate impact violations as a

persistent barrier to renters in Philadelphia. HEC offered its educational resources

to their partner organizations.

58.     Each of these activities likewise diverted scarce organizational resources in the

form of time and financial expenditures, including: the time, cost and staff hours associated with

paying the testers associated with this case; the time, cost and staff hours associated with drafting

and distributing the landlord compliance manual; the time, cost and staff hours associated with

drafting, disseminating, and preparing internal procedures to respond to HEC's public education

campaign about source of income and race-based housing discrimination; and the time, cost and

staff hours associated with drafting, submitting and eventually disseminating the HUD fact sheet.

## CAUSES OF ACTION

### First Cause of Action

**Discrimination Based on Race in Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.
– Disparate Treatment Liability**

59.     Plaintiff alleges and incorporates by reference all the proceeding paragraphs of

this Complaint.

60.     As alleged above, Defendants explicitly advertise "Section 8 accepted" only in

their properties in Southwest Philadelphia in majority-Black neighborhoods.

17

61.     Defendants' "no Section 8" policy and practice in predominantly white neighborhoods are disparate treatment towards Black renters or households in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. Specifically, it is unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race . . . ." 42 U.S.C. § 3604(a), to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling… because of race… ." 42 U.S.C. § 3604(b) and to "make, print, or publish… any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race. . . ." 42 U.S.C. § 3604(c).

62.     Defendants' discriminatory conduct was carried out individually or by their employees, agents or representatives who were acting within the scope of their authority.

63.     Defendants know or should know that Black renter households make up a majority of Housing Choice Voucher recipients (83.5%) and a majority of households in the census tracts in which Defendants advertise that they accept Housing Choice Vouchers: census tract 62 (85% Black); census tract 67 (83% Black); and census tract 61 (85% Black).

64.     By accepting Housing Choice Voucher renter applications only in majority-Black neighborhoods and not in any other of Defendants' properties, Defendants expressly treat prospective tenants differently based on race.

65.     By accepting Housing Choice Voucher renter applications only in majority-Black neighborhoods and not in any other of Defendants' properties, Defendants expressly treat prospective tenants different based on the racial makeup of the neighborhood where the rental property is located.

66.     A discriminatory purpose is therefore the motivating factor behind Defendants'
policy to accept Housing Choice Vouchers in Black neighborhoods but not in whiter
neighborhoods.

67.     Defendants' policy and practice have no reasonable, legitimate, non-
discriminatory justification. Even if Defendants have some business justification for their policy
and practice, other, less-discriminatory alternatives are and have been available to Defendants to
achieve their objectives. Any such nondiscriminatory reason is merely a pretext for
discrimination.

68.     Defendants' discriminatory actions frustrate Plaintiff HEC's mission by
perpetuating racial discrimination in housing—a practice HEC seeks to eliminate. HEC has
diverted substantial time and resources from its planned activities in order to investigate and
combat Defendants' unlawful policy and practice. Thus, Plaintiff has been injured by
Defendants' discriminatory conduct and has suffered damages.

69.     Defendants' policy and practice are intentional, willful, and made in reckless
disregard of the rights of others.

## **Second Cause of Action**

**Discrimination Based on Race in Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. – Disparate Impact Liability**

70.     Plaintiff alleges and incorporates by reference all the proceeding paragraphs of
this Complaint.

71.     Disparate impact claims are recognized under the FHA to target "unlawful
practices includ[ing] zoning laws and other housing restrictions that function unfairly to exclude
minorities from certain neighborhoods without any sufficient justification." *Inclusive
Communities*, 519 U.S. at 539.

72.     Defendants' refusal to accept Housing Choice Vouchers has a disproportionate impact on Black renters and effectively discriminates on the basis of race.

73.     Defendants' "no Section 8" policy and practice have a discriminatory impact on Black renters or households in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. Specifically, it is unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race . . . ." 42 U.S.C. § 3604(a), to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling… because of race… ." 42 U.S.C. § 3604(b) and to "make, print, or publish… any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race. . . ." 42 U.S.C. § 3604(c).

74.     As a result of Defendants' discrimination on the basis of whether the potential renters participate in the Voucher Program, Defendants' policy and practice actually and predictably result in a significant disparate impact on the basis of race.

75.     Defendants' discriminatory conduct was carried out individually or by their employees, agents or representatives who were acting within the scope of their authority.

76.     Defendants' policy and practice disproportionally harm Black renters and households.

77.     Defendants' "no Section 8" policy and practice are likely to cause Black renters and households to be disproportionately denied rental housing opportunities compared to prospective white renters. As alleged above, the overwhelming majority of Housing Choice Voucher holders are Black (83.5%) while only a small fraction are white (9%).

78.     Defendants' policy and practice have no reasonable, legitimate, non-discriminatory justification.

79.     Even if Defendants have some business justification for their policy and practice, other, less-discriminatory alternatives are and have been available to Defendants to achieve their objectives.

80.     Any nondiscriminatory reason offered by Defendants for their conduct is merely a pretext for discrimination.

81.     Defendants' discriminatory actions frustrate Plaintiff HEC's mission by perpetuating racial discrimination in housing—a practice HEC seeks to eliminate.

82.     HEC has diverted substantial time and resources from its planned activities in order to investigate and combat Defendants' unlawful policy and practice.

83.     Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages.

84.     Defendants' policy and practice are intentional, willful, and made in reckless disregard of the rights of others.

## **JURY DEMAND**

85.     HEC demands a trial by jury on its claims.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully requests that the Court:

(a)     Enter judgment declaring that Defendants' policy and practice of willfully refusing to rent available housing units to Housing Choice Voucher holders have an unlawful discriminatory impact based on race in violation of the FHA, 42 U.S.C. §§ 3604(a), (b), and (c);

(b)   Order appropriate injunctive relief, including that:

     i.  Defendants cease their policy and practice of refusing to rent to Housing Choice Voucher holders and take appropriate, nondiscriminatory measures to accept them as tenants;

    ii.  Defendants take affirmative steps as to their legal obligations under the FHA, including but not limited to: educating themselves or seeking expert advice to understand the administrative process for accepting the Voucher Program in Philadelphia; providing training to their employees and agents, and supervision to prevent future unlawful housing discrimination; and publicly promoting anti-discrimination policy language in Defendants' public-facing media and rental applications.

(c)   Award HEC monetary damages in an amount to be determined at trial;

(d)   Award HEC reasonable attorneys' fees and costs;

(e)   Award HEC punitive damages in an amount to be determined at trial; and

(f)   Grant any such other relief as the Court may deem just and proper.


Dated: December 8, 2022                     Respectfully submitted,

                                       /s/ Steven Bizar               

DECHERT LLP
Steven Bizar (Pa. Bar No. 68316)
Thomas J. Miller (Pa. Bar No. 316587)
David M. Costigan (Pa. Bar No. 329496)
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
steven.bizar@dechert.com
thomas.miller@dechert.com

david.costigan@dechert.com
(215) 994-4000

PUBLIC INTEREST LAW CENTER
Mary M. McKenzie (Pa. Bar No. 47434)
Sara A. Bernstein (Pa. Bar No. 329881)
2 Penn Center, 1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
mmckenzie@pubintlaw.org
sbernstein@pubintlaw.org
(215) 627-7100

23